UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ROBIN ANNETTE SMITH,            )
                                )
                                )
        *Plaintiff*,             )
                                )
v.                              )    No. 1:18-cv-00264-SKL
                                )
MALCOLM KENNEMORE,              )
                                )
                                )
        *Defendant*.             )

## MEMORANDUM AND ORDER

Before the Court is Defendant Malcolm Kennemore's motion for summary judgment with supporting brief [Docs. 27 & 28]. Plaintiff Robin Smith filed a response in opposition [Doc. 34], and Defendant filed a reply [Doc. 37]. This matter is now ripe. For the reasons stated below, Defendant's motion [Doc. 27] will be **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

Plaintiff and Defendant are neighbors, though not friendly with one another. Plaintiff was at home on August 4, 2017, at around 8:30 a.m., when she saw Defendant's wife following a dog into Plaintiff's backyard. The dog had apparently escaped Defendant's yard. Plaintiff came outside and informed Defendant's wife that she (Plaintiff) would shoot the dog if the dog came onto Plaintiff's property again.[1]

---

[1] Defendant also claims Plaintiff threatened to shoot his wife, but Plaintiff denies this allegation.

At the time, Defendant was a sergeant with the Chattanooga Police Department ("CPD").[2] Around 12:30 p.m., he drove over to Plaintiff's house, approached her front door and rang the bell. When Plaintiff opened the door, Defendant asked if Plaintiff was the person who threatened to shoot his wife and his dog. Plaintiff admitted to threatening to shoot the dog, but denied threatening to shoot Defendant's wife. At that point, according to Plaintiff, Defendant became angry and started shaking and speaking loudly. Plaintiff also claims Defendant reached across the threshold of the door and poked Plaintiff in the chest with his finger. Plaintiff then retrieved a large walking stick. Meanwhile, Plaintiff's friend, who was upstairs during the altercation, called 911. At some point, Plaintiff asked Defendant to leave but he refused.

Defendant claims Plaintiff struck him repeatedly with the stick and that he sustained an injury to his wrist attempting to deflect the stick. Plaintiff denies hitting Defendant with the stick, but Plaintiff admits Defendant had a knot on his wrist after the incident (which required no medical treatment). Defendant grabbed the stick and pulled it out of Plaintiff's hands, pulling Plaintiff out of her house and onto the porch in the process. Defendant told Plaintiff he was taking the stick with him "for evidence" and he put it in his car [Doc. 34-1 at Page ID # 268].

Shortly thereafter, Defendant called 911. Two Hamilton County Sheriff's Department ("HCSD") deputies soon arrived and interviewed Defendant and Plaintiff. Defendant gave the deputies the stick. Plaintiff was arrested on charges of aggravated assault and taken first to the hospital due to high blood pressure, and then to jail for booking. The charge was amended to

---

[2] He has since retired as a law enforcement officer, but he still works for the CPD in a civilian role [Doc. 34-6 at Page ID # 294-95].

misdemeanor assault at some point, possibly when she first appeared before a magistrate. Regardless, the charge was dismissed altogether on August 27, 2018 [Doc. 28-7].

At the time of her encounter with Defendant, Plaintiff was not aware Defendant was a CPD officer. Defendant was off-duty, he was not wearing any clothing indicating he was a police officer, and the car he drove was unmarked. He was carrying a weapon, but it was concealed as is required by CPD policy. Defendant worked as a polygraph examiner, so it was normal for him to look like an ordinary civilian rather than a police officer, even when on duty. He did not identify himself as a police officer when he called 911, but one of the responding HCSD deputies knew Defendant, and so Defendant did identify himself when the HCSD deputies arrived, but Defendant did not show anyone his badge. After that day, Defendant did not speak to the responding HCSD deputies about the incident or the criminal case at any time.

The true bill returned in Plaintiff's Hamilton County criminal case identified the "prosecutors" of the case as (1) Joshua Richmond, one of the responding HCSD deputies, and (2) Defendant [Doc. 34-9]. Deputy Richmond is further identified as "#2799, Hamilton County Sheriff's Department." Written beside Defendant's name is his home address, and nothing on the true bill indicates Defendant was a CPD officer.

Plaintiff filed this lawsuit in Hamilton County Circuit Court on July 20, 2018. Defendant removed it to this Court on November 5, 2018, and Plaintiff filed an amended complaint with no objection on April 17, 2019 [Doc. 20]. In her amended complaint, Plaintiff asserts two causes of action pursuant to 42 U.S.C. § 1983: count one for "unlawful entry and seizure without probable cause," which essentially relates to the events leading up to Defendant calling 911; and count two for malicious prosecution, which essentially relates to the 911 call and events following. She also

asserts state law tort claims for assault (count three), battery (count four), conversion (count five), and malicious prosecution (count six).

Defendant argues Plaintiff's claims should be dismissed for a number of reasons. First, as to the federal civil rights claims, Defendant claims Plaintiff cannot show Defendant was acting "under color of" state law, a requirement of 42 U.S.C. § 1983. If all of the federal claims are dismissed, Defendant argues the Court should, in its discretion, decline to exercise supplemental jurisdiction over the remaining state law claims, as permitted by 28 U.S.C. § 1367(c)(3). In the alternative, Defendant argues he is immune from suit on the Section 1983 unlawful entry claim (qualified immunity), and on the assault and battery claims (state law immunity). He also argues Plaintiff cannot prove various elements of her malicious prosecution and conversion claims, and that the assault, battery, and conversion claims should be dismissed because the record reflects he was acting in self-defense.

### A. Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that *matters*—i.e., a fact that, if found to be true, might "affect the outcome" of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party. *Id.*; *Jones v. Sandusky Cnty., Ohio*, 541 F. App'x 653, 659 (6th Cir. 2013); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson*, 477 U.S. at 249. Instead, the court must view the facts and all

inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports*, 253 F.3d at 907.

In ruling on a motion for summary judgment, the court may consider any affidavits along with any pleadings, depositions, answers to interrogatories, or admissions. *Pennycuf v. Fentress Cnty. Bd. of Educ.*, 404 F.3d 447, 450 (6th Cir. 2005). The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jones*, 541 F. App'x at 659. The movant must support its assertion that a fact is not in dispute by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 323. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Stated differently, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Toledo v. CSX Transp., Inc.*, No. 3:16-CV-475-TAV-DCP, 2018 WL 4923361, at *3 (E.D. Tenn. Oct. 10, 2018) (quotation marks omitted) (quoting *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991)).

The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *Nat'l Satellite Sports*, 253 F.3d at 907.

## II. ANALYSIS

As explained below, the Court concludes that the facts, even when viewed in Plaintiff's favor, do not show Defendant was acting under color of law. As a result, Plaintiff's section 1983 claims will be dismissed. With no remaining claims over which the Court can exercise original jurisdiction, the Court, in its discretion, will remand the remaining state law claims to the Circuit Court for Hamilton County.

### A. Under Color of Law

As mentioned, to state a claim under 42 U.S.C. § 1983, Plaintiff must show Defendant deprived Plaintiff of "a right secured by the Constitution or laws of the United States while acting '**under color of state law**.'" *Chapman v. Higbee*, 319 F.3d 825, 833 (6th Cir. 2003) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 833)) (emphasis added). "The United States Supreme Court has held that acting under color of state law requires that the defendant in a § 1983 action have exercised the power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Redding v. St. Eward*, 241 F.3d 530, 533 (6th Cir. 2001) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).

A private party's actions can "constitute state action under section 1983 where those actions may be 'fairly attributable to the state.'" *Chapman*, 319 F.3d at 833 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947 (1982)). However, "[a]cts of police officers in the ambit of their personal, private pursuits fall outside 42 U.S.C. § 1983." *Redding*, 241 F.3d at 533 (quoting *Stengel v. Belcher*, 522 F.2d 438, 440-41 (6th Cir. 1975)). In *Chapman*, the United States Court of Appeals for the Sixth Circuit listed the three tests courts typically use to determine whether state action is present in a particular case: "(1) the public function test, (2) the state

6

compulsion test, and (3) the symbiotic relationship or nexus test." 319 F.3d at 833 (citing *Wolotsky*, 960 F.2d at 1335). In *Lugar*, the United States Supreme Court acknowledged a fourth test for determining whether a person is acting under color of law, the "joint action test." 457 U.S. at 939 (citing *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 157 (1978)).

Plaintiff does not argue the state compulsion test. She appears to rely on the public function test, the joint action test, and the nexus test.

Under the public function test, a private party "is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state." *Chapman*, 319 F.3d at at 833. This test has been construed narrowly, with only functions like holding elections, exercising eminent domain, and "operating a company-owned town" identified by courts as powers "traditionally reserved exclusively to the state." *Id.* at 833-34 (citations omitted). Plaintiff argues "the collection of evidence and safeguarding it is a sole function of the state." [Doc. 34 at Page ID # 246]. She relies on the fact that Defendant seized Plaintiff's walking stick and told her he was keeping it "for evidence," and the fact that the HCSD did, in fact, log the stick as evidence [Doc. 34 at Page ID # 246].

Courts hold that private security officers do not perform a state function when they detain and search a suspected shoplifter: the "mere fact that the performance of private security functions may entail the investigation of a crime does not transform the actions of a private security officer into state action." *Chapman*, 319 F.3d at 834 (citing, *inter alia*, *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996)). In *Chapman*, the Sixth Circuit concluded the private security guard did not perform a state function when he stopped and detained a suspected shoplifter, even though the he was an off-duty sheriff's deputy, and he was wearing his "official sheriff's department uniform,

7

badge, and sidearm." *Id.* The case at bar is even further removed from a state function than *Chapman*. Defendant himself claimed to be the victim of a crime (and was not, for example, enforcing a third party's policy or rule as in *Chapman*), and Defendant was dressed in civilian clothes and was not displaying a badge or weapon, or making any other outward display he was a police officer.

Plaintiff cites no authority or evidence for her position that the collection and safeguarding of evidence is a power traditionally reserved exclusively to the state, and the Court could find none. Of course, police and prosecutors ultimately determine what constitutes "evidence" in a case depending on the offenses a suspect is charged with, and once they do so they typically store it securely. But that does not mean a civilian becomes a state actor when they set aside an object, located at an unsecured scene of an alleged crime, which they think might be of interest to the police.

Plaintiff's reliance on the joint action test articulated in *Lugar* is also misplaced. *Lugar* specifically provides that the joint action test applies only to cases involving prejudgment attachments.[3] 457 U.S. at 939; *see also id.* at 939 n.21 ("[W]e do not hold today that 'a private party's mere invocation of state legal procedures constitutes "joint participation" or "conspiracy" with state officials satisfying the § 1983 requirement of action under color of law.' The holding

---

[3] The debtor in *Lugar* operated a truck stop and was indebted to his oil supplier, Edmondson Oil Co. ("Edmonson"). Edmondson sued on the debt in state court and, pursuant to state law, was able to obtain an attachment of the debtor's property based on allegations in an ex parte petition that the debtor "might dispose of his property to defeat his creditors." 457 U.S. at 924. The state court issued a writ of attachment based on the ex parte petition, which the county sheriff then executed. The result was that the debtor's property was "effectively sequestered." *Id.* at 924-25. About a month later, the state court dismissed the attachment, finding Edmondson failed to prove the allegations. *Id.* at 925.

today, as the above analysis makes clear, is limited to the particular context of prejudgment attachment."). The Court held the plaintiff's only viable constitutional claim was his attack of the Virginia state statute which created the prejudgment attachment procedure. The Court dismissed the plaintiff's claim that Edmondson acted "unlawfully" in obtaining the attachment, noting Edmondson "invoked the statute without the grounds to do so," which "could in no way be attributed to a state rule or a state decision." *Id.* at 940; *see also id.* at 941 ("While private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by the statute obviously is the product of state action."). Similarly, Plaintiff has not presented any evidence, or even argument, that Defendant's decision to grab Plaintiff's walking stick and to call 911 to report Plaintiff's alleged assault, was in any way attributable to the state or some law enforcement objective. Rather, the undisputed proof is that Defendant was first acting as a private citizen concerned about his wife and dog and then as the victim of an alleged assault.

Plaintiff acknowledges the defendant in *Lugar* "used state court to seize property," but she asserts that the "point" of the case is that "when in conjunction with the state, a private person can become a state actor acting under color of state law." [Doc. 34 at Page ID # 246]. This may be true, at the very least under the circumstances in *Lugar*, but in this case, Plaintiff's point is best addressed in the context of the nexus test; that is, do Defendant's actions "demonstrate a sufficiently close nexus between the government and the private party's conduct so that the

conduct may be fairly attributed to the state itself."[4] *See Chapman*, 319 F.3d at 834 (citations omitted).

"Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under color of law.'" *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009) (citing *Briscoe v. LaHue*, 460 U.S. 325, 329 (1983)) (other citations omitted). This can be true even if the person providing the information is employed as a police officer, provided the officer is acting "in the ambit of their personal, private pursuits." *Stengel*, 522 F.2d at 441 (citations omitted); *see also Redding*, 241 F.3d at 533-34 (off-duty officer's action in calling 911 to report a crime was "functionally equivalent to that of any private citizen calling for police assistance"). To determine whether an officer is acting in the ambit of their personal pursuits, versus their official duties, courts look to "the nature of the act performed." *Stengel*, 422 F.2d at 441 (quotation marks omitted) (quoting *Johnson v. Hackett*, 284 F. Supp. 933, 937 (E.D. Pa. 1968)). Accordingly, an officer "acts under color of state law when he purports to exercise official authority." *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 903 (6th Cir.

---

[4] In *United States v. Price*, cited by Plaintiff, the Supreme Court held: "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [42 U.S.C. § 1983]. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." 383 U.S. 787, 794 (1966). Plaintiff accuses **Defendant** of lying to the HCSD deputies about Plaintiff assaulting him, but she does not accuse the HCSD deputies of any wrongdoing. Rather, she claims Defendant "duped" the deputies [Doc. 34 at Page ID # 251], and that Defendant "fabricate[d] a story to mislead the investigating deputies" [Doc. 20 at Page ID # 80]. As a result, it cannot be said that the officers were also participating in the "prohibited action." *See, e.g., Kepperling v. Kepperling*, No. 3:19-cv-1, 2019 WL 2492787, at *3-4 (S.D. Ohio June 14, 2019) (citations omitted) (where plaintiff did not claim any state actor engaged in wrongdoing, no § 1983 liability against non-state actors).

2004) (citation omitted). "Such manifestations of official authority include flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute between third parties pursuant to a duty imposed by police department regulations." *Id.* (citation omitted). It is undisputed Defendant did none of these things.

Plaintiff cites to the fact that Defendant drove his police car to Plaintiff's house and wore clothes he normally wears while performing his official duties, but the car was unmarked and the clothes were ordinary civilian clothes. This can hardly be characterized as a "manifestation of official authority." The same goes for the fact that Defendant was armed with his service pistol and was carrying his police credentials—both the weapon and the credentials were concealed the entire time, and Defendant never showed his badge. Plaintiff did not even know Defendant was a police officer until the following day. *See Neuens v. City of Columbus*, 303 F.3d 667, 67-71 (6th Cir. 2002) (observing that the record "clearly demonstrates [the officer] was acting in his private capacity" where he was in plain clothes, did not display a badge, and the plaintiff was not aware he was a police officer).

Plaintiff contends Defendant "entered Plaintiff's home without a warrant while (arguably) investigating a crime against Defendant's wife," [Doc. 34 at Page ID # 248], but Defendant's unrebutted testimony was that he went to talk to Plaintiff, as her neighbor, about Plaintiff's threats against Defendant's dog and allegedly against Defendant's wife [Doc. 34-6 at Page ID # 302]. For example, Defendant testified that rather than call the HCSD about the threats, his "thought at the time was just to speak with [Plaintiff] and to see if [they] could resolve the issue." [*Id.* at Page ID # 311]. In a sworn affidavit, HCSD Deputy Richmond (one of the two responding deputies) confirms Defendant's account: "Mr. Kennemore stated that he went to his neighbor's house to ask

her about why she had made [the] threat." [Doc. 28-5 at Page ID # 171, ¶ 5]. Moreover, Plaintiff resides outside of CPD jurisdiction, and Defendant's role at CPD was to conduct polygraph tests.

Plaintiff also cites the following: Defendant allegedly stated he was seizing Plaintiff's walking stick "for evidence"; Deputy Richmond knew Defendant was a police officer; and Defendant's name is listed on the true bill as a "Prosecutor," along with Deputy Richmond.

Regarding the "for evidence" comment, which the Court has already addressed once, Plaintiff cites the fact that Defendant put the stick in his CPD-issued car until the HCSD deputies arrived, but again, the car was unmarked and Defendant testified he drove that car "most everywhere." [Doc. 34-6 at Page ID # 310]. Deputy Richmond—not Defendant—took the stick away from the scene and placed it in the HCSD evidence division [Doc. 28-5 at Page ID # 171, ¶¶ 6, 7, & 12]. Deputy Richmond's familiarity with Defendant also does not change the analysis. His unrefuted affidavit provides that Defendant "did not influence [his] decision to arrest [Plaintiff]," and that he "believed" he had probable cause to arrest Plaintiff based on his interviews of Plaintiff and Defendant [*id.*, ¶¶ 7, 10-11]. *See Redding*, 241 F.3d at 533-34 (holding that off-duty officer's actions in calling 911 to report a crime were "functionally equivalent to that of any private citizen calling for police assistance;" and dismissing tort claim, which was based on conspiracy with police, because "the unrefuted affidavit of the arresting officer establishes that he was not influenced in any way by [the off-duty officer] in deciding to arrest [the suspect/§ 1983 plaintiff]."). The Court further notes there is a box on the "Incident Report," where Deputy Richmond or the other HCSD deputy could have checked to indicate Defendant was an officer, but the box is not checked [Doc. 34-4 at Page ID # 282].

Defendant addresses the true bill issue in his reply. He points out that he is identified by his home address, whereas Deputy Richmond (also listed on the true bill) is identified as: "#2799, Hamilton County Sheriff's Department" [Doc. 34-9]. By way of explanation, Defendant also points out that Tennessee Code Annotated § 40-17-106 requires the district attorney general to list the names of witnesses on the true bill. There is no dispute Defendant gave a statement to the HCSD deputies or that he spoke to them in connection with the incident (although he did not testify at the grand jury hearing). The issue with Plaintiff's § 1983 claims is whether he did so under color of law. Nothing about the listing of Defendant's name and his home address on the true bill indicates Defendant was performing any official duties or acting other than in furtherance of his personal pursuits.

The cases Plaintiff cites do not help her cause. *Chapman* (discussed above in connection with the public function test) involved an-duty sheriff's department officer who worked part-time as a security guard at Dillard's. When working as a security guard, the defendant wore his official sheriff's department uniform, including his badge and gun. One night, he stopped a customer suspected of shoplifting. He ordered the customer to a dressing room, where he and a female store manager searched the customer's purse and checked under her coat and shirt. The Sixth Circuit reversed the district court's grant of summary judgment to the defendant security guard, finding there was a question of fact as to whether the "strip search" was done under color of law for purposes of § 1983:

> During the incident at issue, the Dillard's security officer did not represent himself as a police officer, threaten to arrest Chapman, wave his badge or weapon, or establish any contact with the sheriff's department. He did however initiate a strip search by requiring Chapman to enter a fitting room with the sales manager to inspect her clothing. **Because Dillard's policy *mandates* police**

> **intervention in strip search situations, a reasonable jury could very well find that the initiation of a strip search by an armed, uniformed sheriff's deputy constituted an act that may fairly be attributed to the state.** Additionally, if Chapman did not feel free to leave, **as a result of the security officer's sheriff's uniform, his badge, or his sidearm, a reasonable jury could find the detention was a tacit arrest and fairly attributable to the state**.
>
> Therefore, we find that there is a genuine issue of material fact as to whether the security officer acted under "color of state law" when he asked Chapman to enter the fitting room with the sales manager so that Chapman's clothes and person could be searched.

319 F.3d at 835.

*Chapman* is readily distinguishable, as Defendant made no outward indication to Plaintiff he was a police officer, and Plaintiff does not cite any evidence to show he was acting pursuant to any official duties.

In *Layne v. Sampley*, an off-duty police officer (Sampley) shot a man (Layne) he had questioned three days earlier in connection with a domestic assault. 627 F.2d 12, 12-13 (6th Cir. 1980). At the time of the shooting, Sampley was on vacation, but was in the company of other police officers and in possession of his service weapon. The district court set aside the § 1983 jury verdict in favor of Layne, finding there was no evidence to support a finding that Sampley was acting under color of law. The Sixth Circuit reversed, reasoning:

> The fact that Sampley had authority to carry the weapon only because he was a police officer, that the argument's genesis was unquestionably in the performance of police duties, and that the threat was received through a police agency raised a question for the jury whether Sampley was acting under color of state law. When this is added to other facts such as that Layne found Sampley with a revolver in the company of police officers and did not know he was on vacation, it appears that the jury's verdict is supported by evidence in the record and should not have been set aside.

*Id.* at 13. By contrast, in the case at bar, Defendant did not use his service weapon (or badge, or handcuffs), and Defendant's dispute with Plaintiff undisputedly arose from Plaintiff's threats to Defendant's dog, and not from any interactions Defendant had with Plaintiff in the performance of his official duties.

In *Stengel*, an off-duty police officer shot three men, killing two; the officer also sprayed one of the men with mace. The officer and the men were all patrons at the same bar. Before the shooting, the young men had been in a dispute with two other patrons, which was escalating when the officer "involved himself in the altercation." 522 F.2d at 440. The jury found the officer was acting under color of state law, and the Sixth Circuit affirmed, reasoning that the mace and the gun used in the fight were issued by the police department, and because "[t]here was evidence which permitted an inference that [the officer]. . . intervened in the dispute pursuant to a duty imposed by police department regulations." This case is distinguishable for the same reasons as *Layne*, discussed above.

In sum, the Court finds the facts of this case, even when viewed in the light most favorable to Plaintiff, cannot support a finding that Defendant was acting under color of law when he seized Plaintiff's stick, entered her home, or when he called the HCSD and alleged that Plaintiff had assaulted him with the stick. Accordingly, the Court finds Defendant is entitled to judgment as a matter of law on Plaintiff's claims asserted pursuant to 42 U.S.C. § 1983. These claims will be **DISMISSED**.

### B. State Law Tort Claims

Plaintiff's state law claims may be heard by the Court through the exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367, but the exercise of federal supplemental jurisdiction is

discretionary. District courts may properly decline to exercise supplemental jurisdiction over a state law claim when the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c). In making this discretionary decision, a district court should weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *accord Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). When all federal claims have been dismissed, generally the preferred disposition of state law claims is dismissal, or, where a case has come into federal court on removal, remand to state court. *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)). A federal district court should only exercise its discretion to retain supplemental jurisdiction after dismissing federal claims under limited circumstances, which frequently involve some degree of forum manipulation. *See Carnegie-Mellon*, 484 U.S. at 357.

Defendant contends (alternatively) that the "facts and analysis for both the state and federal claims, in the present case, coincide, therefore making it easier, more appropriate and more judicially economic for this Court to decide the state law issues." [Doc. 37 at Page ID # 368]. But the only ruling the Court has made on Plaintiff's § 1983 claims is that, even viewing the facts in the light most favorable to Plaintiff, Defendant was not acting under color of state law. This is not an element of Plaintiff's state law claims. Moreover, two of Plaintiff's state law claims (assault and battery) do not appear to have any significant legal overlap with her § 1983 claims.

In the exercise of its discretion, and because no federal claims remain in the instant action, the Court will decline supplemental jurisdiction over Plaintiff's state law claims and will **REMAND** them to the Circuit Court for Hamilton County, Tennessee.

### III. CONCLUSION

For the reason stated herein, Defendant's motion for summary judgment [Doc. 27] is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's § 1983 claims (counts one and two of the amended complaint), are hereby **DISMISSED**. Plaintiff's state law claims of assault, battery, conversion, and malicious prosecution (counts three, four, five, and six of the amended complaint) are **REMANDED** to the Hamilton County Circuit Court. The Clerk is **DIRECTED** to mail a copy of this Memorandum and Order to the Clerk of the Hamilton County Circuit Court, 28 U.S.C. § 1447(c), and to **CLOSE** this case.

SO ORDERED.

ENTER:

*s/ Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE